**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27 WELFARE AND PENSION FUNDS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No.    07 C 6873 |
| vs. | ) ) | Judge Lefkow |
| HURON VALLEY GLASS COMPANY, L.L.C., a foreign limited liability company, W & G, INC., GEORGE STRIPP, Individually, and W & G, L.L.C., | ) ) ) ) ) | Magistrate Judge Mason |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

Plaintiffs, by their attorneys, DONALD D. SCHWARTZ and ARNOLD and KADJAN, complain against Defendants, **HURON VALLEY GLASS COMPANY L.L.C., a foreign limited liability company, W & G, INC., George Stripp, Individually and W & G, LLC**, as follows:

**COUNT 1 – HURON VALLEY GLASS**

1.  (a)    Jurisdiction of this cause is based on Section 301 of the National Labor Relations Act, 29 U.S.C. Section 185(a), as amended.

(b)    Jurisdiction of this cause is based upon Section 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. Section 1132, 1145 ("ERISA"), as amended.

2.    Venue is founded pursuant to 29 U.S.C. Section 1132(e)(2) in this District where the Funds, as described in Paragraph 3, are administered.

1

3.    (a)    The Plaintiffs in this count are the TRUSTEES OF THE GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27 FRINGE BENEFIT FUNDS ("the Funds"), and have standing to sue pursuant to 29 U.S.C. Section 1132(d)(1).

(b)    The Funds have been established pursuant to collective bargaining agreements previously entered into between the Glaziers Union Fringe Benefit Funds and its affiliated locals (the "Union") and certain employer associations whose employees are covered by the collective bargaining agreement with the Union.

(c)    The Funds are maintained and administered in accordance with and pursuant to the provisions of the National Labor Relations Act, as amended, and other applicable state and federal law and also pursuant to the terms and provisions of the agreements and Declarations of Trust which establish the Funds.

4.    Defendant, **HURON VALLEY GLASS COMPANY, L.L.C. ("HURON")** is authorized to do business in Michigan and is an employer engaged in an industry affecting commerce.

5.    Since on or about October 4, 2005, **HURON** has entered into successive collective bargaining agreements with the Union pursuant to which it is required to pay specified wages and to make periodic contributions to the Funds on behalf of certain of its employees (Exhibit "A").

6.    By virtue of certain provisions contained in the collective bargaining agreements, **HURON** is bound by the Trust Agreement establishing the Funds.

7.    Under the terms of the collective bargaining agreements and Trust Agreements to which it is bound, **HURON** is required to make contributions to the Funds on

behalf of their employees and, when given reasonable notice by Plaintiffs or their representatives, to submit all necessary books and records to Plaintiffs' accountant for the purpose of determining whether or not it is in compliance with its obligation to contribute to the Funds.

8.          Since October 4, 2005, **HURON** has admitted, acknowledge and ratified the collective bargaining agreements entered into with the Union by filing periodic report forms with the Funds by making some, but not all, of the periodic payments to the Funds by the collective bargaining agreements.

9.          Plaintiffs are advised and believe that for the period **May 7, 2007 through February 8, 2008 HURON** has failed to make some of the contributions from time to time required to be paid by it to the Funds pursuant to the terms of the Trust Agreements by which it is bound, all in violation of its contractual obligations and its obligations under applicable state and federal statutes.

10.         Plaintiffs are also advised and believe that **HURON** has violated the contractual subcontracting clause by recent subcontracting to J & D Erectors.

11.         Plaintiffs are further advised and believe that the total amount owed by **HURON** to the Funds due to failure to make contributions that are owed for the period **May 7, 2007 through February 8, 2008** is $153,763.55, plus liquidated damages, interest and attorneys fees and costs, as owed under ERISA and under the collective bargaining agreement and Trust Agreements.

**WHEREFORE,** Plaintiffs pray for relief as follows:

A.          Judgment be entered against **HURON** and in favor of Plaintiffs in the amount of $153,763.55.

B.      Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2).

C.      **HURON** be enjoined from violating the terms of the collective bargaining agreement and Trust Agreements by failing to make timely payments to the Funds and be ordered to resume making those payments.

D.      This Court grant Plaintiffs such other further relief as it may deem appropriate under the circumstances.

## COUNT II – W & G, INC.

1-11    Plaintiffs repeat an reallege Paragraphs 1-11 of Count I as Paragraphs 1-11 of Count II.

12.     **W & G, INC.** is a dissolved Michigan corporation.

13.     **W & G, INC.** is liable under the collective bargaining agreement entered into between Huron Valley Glass Company, LLC and the Union as **W & G, INC.'s** agent signed the collective bargaining agreement.

14.     **W & G, INC.** is liable for unpaid benefits for bargaining unit employees on the payroll of **HURON**, as **W & G, INC.** is the alter ego to **HURON** under the applicable labor relations theory in that:

a.      **GEORGE STRIPP and DENNIS AHERN** control(s)ed the labor relations policy making of both companies;

b.      The companies are interrelated and share common employees, equipment, materials and jobs in that **W & G, INC.** used all of the foregoing which previously and/or currently were used by **HURON**;

4

c.　　The companies share common management including **GEORGE STRIPP and DENNIS AHERN**, and;

d.　　On information and belief the companies share common ownership, i.e. **GEORGE STRIPP and DENNIS AHERN**.

15.　　By virtue of the foregoing, Plaintiffs have been damages in the amount of $153,763.55, as measured by the amount of benefits owed by **W & G, INC.** for its employees and for benefits owed by not paid by subcontractor J & D Erectors.

**WHEREFORE,** Plaintiffs pray for relief as follows:

A.　　Judgment be entered in favor of Plaintiffs against **W & G, INC.** in the amount of $153,763.55.

B.　　Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2).

C.　　**W & G, INC.** be enjoined from violating the terms of the collective bargaining agreements and Trust Agreements by failing to make timely payments to the Funds and be ordered to resume making those payments.

D.　　This Court grant Plaintiffs such other and further relief as it may deem appropriate under the circumstances.

## COUNT III – GEORGE STRIPP, Individually

1-15　　Plaintiffs repeat and reallege Paragraphs 1-15 of Count II as Paragraphs 1-15 of Count III.

16.　　**GEORGE STRIPP, Individually** is liable for unpaid benefits for bargaining unit employees on the payroll of **HURON** and **W & G, INC.** because he signed the

union agreement when W & G, Inc. was a dissolved corporation.

**WHEREFORE,** Plaintiffs pray for relief as follows:

A.      Judgment be entered in favor of Plaintiffs and against **GEORGE STRIPP** in the amount of $153,763.55.

B.      Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2).

C.      **W & G, INC.** be enjoined from violating the terms of the collective bargaining agreements and Trust Agreements by failing to make timely payments to the Funds and be ordered to resume making those payments.

D.      This Court grant Plaintiffs such other and further relief as it may deem appropriate under the circumstances.

## COUNT IV – W & G, LLC

1-11    Plaintiffs repeat and reallege Paragraphs 1-11 of Count I as Paragraphs 1-11 of Count IV.

12.     **W & G, LLC** is a Michigan limited liability corporation.

13.     **W &G, LLC** is liable under the collective bargaining agreement signed by **HURON** and/or **W & G, INC.**, because **W & G, LLC** is the alter ego of **HURON** and/or **W & G, INC.** under the applicable labor relations theory in that:

a.      **GEORGE STRIPP and DENNIS AHERN** control(s)ed the labor relations policy making of both companies.

b.      The companies are interrelated and share common employees, equipment, materials and jobs in that **W & G, LLC** uses all of the foregoing which previously

and/or currently were used by **HURON**;

       c.    The companies share common management including **GEORGE STRIPP and DENNIS AHERN**, and;

       d.    On information and belief the companies share common ownership, i.e. **GEORGE STRIPP and DENNIS AHERN.**

       e.    **W & G, LLC** pays payroll for employees on jobs contracted by **HURON.**

    14.    By virtue of the foregoing, Plaintiffs have been damaged in the amount of $153,763.55.

    **WHEREFORE,** Plaintiffs pray for relief as follows:

    A.    Judgment be entered in favor of Plaintiffs and against **W & G, LLC** in the amount of $153,763.55;

    B.    Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA, Section 502(g)(2).

    C.    **W & G, LLC** be enjoined from violating the terms of the collective bargaining agreements and Trust Agreements by failing to make timely payments to the Funds and be ordered to resume making those payments.

    D.    This Court grant Plaintiffs such other and further relief as it may deem appropriate under the circumstances.

    Respectfully submitted,

                **TRUSTEES OF THE GLAZIERS, et al.,**
                Plaintiffs

By: __S/: Donald D. Schwartz_____
One of their Attorneys

DONALD D. SCHWARTZ
ARNOLD AND KADJAN
19 West Jackson Blvd.
Chicago, Illinois 60604
(312) 236-0415

# ARTICLES OF AGREEMENT

**ARTICLES OF AGREEMENT** made this 22st day of July, 2005 by and between HURON VALLEY GLASS COMPANY, LLC, 5075 CARPENTER, YPSILANTI, MI 48197, (734)434-1160, and PAINTERS DISTRICT COUNCIL NO. 14 and its affiliate, GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY, of the International Union of Painters and Allied Trades, AFL-CIO (the "Union").

## ARTICLE 1

## PARTIES

Whenever the word "Association" is used herein, it shall mean the ASSOCIATION OF GLAZING CONTRACTORS and all of its members individually and collectively, whether now belonging to said Association or who may hereafter be admitted to membership. The members of said Association [and any other employer who is not a member of the Association but is otherwise bound by this Agreement] being sometimes hereinafter referred to as "Employer."

Whenever the word "Union" is used herein, it shall mean the PAINTERS DISTRICT COUNCIL NO. 14 and its affiliate, GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY, of the International Union of Painters and Allied Trades, AFL-CIO and all of the local unions affiliated therewith and all of the members thereof, individually and collectively bound hereafter, whether now members of said local unions or who may hereafter become members of said unions. The members of said unions being sometimes referred to hereinafter as "Employees."

## ARTICLE 2

## RECOGNITION -- UNION SHOP

**Section 1. Recognition of Union.** The Association and the employers it represents in bargaining and such other employers as may become members of the Association or who agree to be bound by the terms of this contract recognize the Union as the sole and exclusive bargaining agent for a unit of employees appropriate for bargaining within Section 9(a) of the National Labor Relations Act. The Association and the employers it represents in bargaining agree that this recognition is predicated on a clear showing of majority support indicated by bargaining unit employees without the need for a National Labor Relations Board certified election under Sections 9(a) and (c) of the Act, for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, employment practices, standards of workmanship, safety practices and other conditions of employment.

**Section 2. Recognition of Association.** (a) The Union recognizes the Association as the sole and exclusive bargaining agent of the Employer members of the Association and of such other

1



EXHIBIT

A

0001

Employers as may become members of the Association or agree to be bound by the terms of this agreement, as to all matters concerning Employees in the Bargaining Unit.

(b)    The Association has been designated as the sole and exclusive bargaining agent of its Employer members and agrees to produce evidence requested by the Union to confirm this authority, including its Constitution, By-Laws, and applications for members.

(c)    The Association shall notify the Union of each additional individual signing up in writing within twenty-four (24) hours following the approval of the application for membership in the Association. Any individual Employer who seeks to withdraw membership in the Association must notify the Union and the Trust Funds in writing and remain bound to the collective bargaining agreement as amended thereafter in future negotiations with the Association unless timely notice is given.

**Section 3.**    **Union Security Clause**

All present employees who are members of the Union on the effective date of this Agreement or on the date of execution of this Agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on and after the eighth day following the beginning of their employment, or on and after the eighth day following the effective date of this Agreement or the date of execution of this Agreement, whichever is the later.

**Section 4.**    **Dues Checkoff**

Every Employer subject to and bound to this Agreement, hereby agrees to check-off from the wages of any Glaziers employed by such Employer, during the terms of this Agreement, Administrative Dues per the conditions set forth in the Union's By-Laws and remit two percent (2%) of the gross pay or such amount as may be determined by the International Union of Painters and Allied Trades to the Union on or before the 10th day of the following month.

**Section 5.**    **Voluntary Payroll Deduction of Political Contributions.**

(a)    Commencing June 1, 2003 and for the life of the agreement the Employer shall honor authorizations for check off of political contributions deductions from wages of Employees employed by such employer during the term of this agreement in the amount of five cents (5¢) per hour worked to the Painters District Council No. 14 Illinois Political Committee (LPC) and to forward all contributions deducted in the employees name and reports on contributions on or before the 10th day of each month for the previous work month to Painters District Council No. 14 LPC Fund.

2

(b)    The Union shall defend, indemnify and save the Employer harmless against any and all claims, demands, suits or other forms of liability that may arise out of or by reason of action taken regarding the creation and administration of the political action check off established by this Article.

**Section 6.**  When hiring new Employees, the Employer shall give first consideration to qualified Glaziers and Apprentice Glaziers who have prior experience with Employers covered by this Agreement and performing work within the area covered by this Agreement.  It is recognized, however, that the Employer has the final right to select the Employees to be hired.  It shall be the responsibility of the Union to assist the Employer in obtaining competent Glaziers.

Upon an Employer's request for specific manpower, the Union will advise which glaziers then available for referral are certified welders, have completed safety courses and are certified to and will work from swing stages and scaffolds.

If an Employer is unable to obtain sufficient employees in any classification through the Glaziers Local 27 referral procedure within 48 hours excluding Saturday, Sunday and holidays from the time the request is made, it may subcontract the work for that job to a union contractor without regard to any other provision of this Agreement.

**Section 7.    Non-Discrimination.**

The Employer, the Union, and Employees agree to conform to any law applicable and that there will be no discrimination in the hiring of Employees or in their training, layoff, discipline, discharge, referral, membership in the Union, or otherwise because of race, color, creed, national origin, religion or sex.

## ARTICLE 3

## HOURS AND WORK RULES

**Section 1.**    Eight (8) hours shall constitute a day's work between the hours of 7:00 A.M. and 4:30 P.M., with one-half (½) hour interval for lunch.  A day will be 7:00 A.M. to 3:30 P.M. or 8:00 A.M. to 4:30 P.M., as directed by the Employer.  Except when the Union, Employer and Employee agree for safety and efficiency of work on new construction **hoisting only**, 6:00 A.M. starting time may be used. No Employee will be employed for a fractional part of a day's work. Any Employee who is late in reporting for work will only be paid for the time he actually works, provided work originally scheduled is available.  If any Employee is late or fails to appear, immediate efforts to obtain a replacement, if it is known he is not going to appear, will be made, and the remaining Employees will immediately start work that can be performed without the absentee(s) or his/her/their replacement(s).  Any replacement will only be paid for the time he/she actually works.

The Union will permit a 6:00 a.m. start time for a 6:00 a.m. to 2:30 p.m. work day only if Employer gives the Union advance written notice of its request for an early start which may be via

3

0003

**Section 3.**   No Employees covered by this Agreement will be allowed to work before 8:00 A.M., after 4:30 P.M., or on Saturdays, Sundays or holidays without notification to the Union prior to such work, except as otherwise provided in Article 2, Section 1, herein.  All overtime will be manned by the Glaziers who manned that job during the normal working day.

Employer may assign on a trial basis work to be performed on Saturday and Sunday to qualified members of the bargaining unit from June 1, 2003 to May 31, 2004.  Notice of any complaints or abuse will be submitted to the Association.  The Union will review this practice to determine if it will continue for the second year of the contract.  Should it continue, review will be made prior to May 31, 2005 to determine if it will continue through May 31, 2006.

The Union will have the right to refuse such overtime to Employers and Employees who are in arrears of Health and Welfare, Pension and Apprentice Fund Fringes, Dues Check off or Local Dues.

**Section 4.**   The following days shall be observed as holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.  No work shall be performed on Labor Day.

**Section 5.**   All regular Employees working for an Employer shall be rotated equally where possible, consistent with efficient operations.

**Section 6.**   Employees will adhere to job safety regulations.

## ARTICLE 4

### OVERTIME

When Employees are asked to work after cessation of a regular day's work (minimum of one-half (½) hour work), time and one-half (1 ½) shall be paid for the first two (2) hours of such overtime each day, Monday through Friday, and double time shall be paid after such two (2) hour overtime period each day, Monday through Friday.  Saturdays, Sundays and holidays shall be paid at the rate of double time.  The Employee shall be paid to the next nearest one-half (½) hour for all work performed on overtime.

However, on Saturdays and Sundays when the job duration does not exceed four (4) hours, eight (8) hours pay at the straight time rate will be allowed through mutual agreement between the Employer and Union (between the hours of 8:00 A.M. and 4:30 P.M.).  There shall be no fractional part of the 8:00 A.M. to 12 P.M.(noon), or 12:30 P.M. to 4:30 P.M. except when the Union, Employer and Employee agree for safety and efficiency of work on new construction <u>hoisting only,</u> starting time may be by 6:00 A.M. or 7:00 A.M.

5

0004

fax or electronic mail, no later than 4:00 p.m. the business day before the work is to be performed. The notice shall state: (1) the job location; (2) the men working on the site; (3) the duration of the project; and (4) day(s) for which an early start is requested.

Failure of the Employer to give prior advance written notice will result in premium pay being due for all hours worked before the regular 7:00 a.m. start time subject to review by the Joint Grievance Board. An employee pay claim for premium pay for early start must be brought within two pay periods of the occurrence.

With mutual consent of both Employer, Employee and the Union, for shops employing four (4) or less Employees, that the interchange of Employees be allowed for jobs under four (4) hours with shops employing no more than five Employees.

When an Employee reports on a job and is told not to start work, the Employer shall pay two (2) hours show up time, at the prevailing rate of wages. Once work has started and weather conditions become such that the Foreman and the Union decide the job is unworkable, the Foreman and entire crew may be sent home and paid for a four (4) hour day. At the start of the fifth hour, Employees must be paid for eight (8) hours.

When a specific job calls for shift work (night work), Three Dollars and Fifty Cents ($3.50) per hour above the prevailing rate shall be paid. Employees shall be prohibited from working back to back shifts, including all foremen and superintendents. Shift work will not take the place of premium time work. The Union must be notified of any shift work jobs.

Section 2A. The Employer agrees not to require the Employees covered by this Agreement to transport any materials or equipment within their own private automobile, except the employee's own tools. However, an Employee may agree to transport the Employer's material and equipment in his car, but he will not be liable for loss or damage. It is agreed an employee's automobile shall not be considered as a condition of employment. However, each Employee is required, as a condition of employment to provide the following hand tools: Tool box or bag, chisels, screwdrivers (straight and Phillips), nail set, hack saw, awl, Stanley knife, claw hammer, mallet, rule, file, rubber or vinyl cutter, glass pliers, wonder tool (jimmy bar, small), putty knives (straight and bent). The Employer shall furnish his Employees with their first hard hat but the employee may pay for replacements for such hard hat, normal wear and tear expected. The Employer will also provide all power tools and suction cups. Employees will be required to sign an official form to use company suction cups and power tools for the term of the employment. The Employee will be held responsible if the cups and power tools are not returned and will be charged the price of a comparable cup or power tool.

Section 2B. No Employee shall be required to walk up more than eight (8) floors from any level on any job site, this section to become effective providing a majority of other crafts of the Building Trades in the Chicago Metropolitan area have agreed to the same type of arrangement in their respective Union Labor Agreement.

4

# ARTICLE 5

## WAGES

**Section 1.**    For the period beginning June 1, 2003 through May 31, 2004 the rate of wages to be paid by the Employer to Journeyperson Glaziers shall be Twenty Nine Dollars and Zero Cents ($29.00) per hour or Two Hundred Thirty Two Dollars and No Cents ($232.00) per day.

Effective June 1, 2004 to May 31, 2005, the negotiated increase to the Union's total economic package shall be Two Dollars and 40/100 Cents ($2.40) per hour to be allocated between wages and benefits by the Union in its sole discretion.

Effective June 1, 2005 to May 31, 2006, the negotiated increase to the Union's total economic package shall be Two Dollars and 40/100 Cents ($2.40) per hour to be allocated between wages and benefits by the Union in its sole discretion.

**Section 2.**    There shall be an established pay day for all employees at least one (1) day each week of the Agreement. Employers shall not hold back more than three (3) days' pay. All deductions, such as Social Security, withholding tax, administrative dues, etc., must be noted on the check stubs. Employer's failure to issue pay checks or tender an insufficient fund check for wages shall not be subject to the no strike provisions of Article 18, Section 2.

**Section 3.**    When employees are laid off or discharged, they shall be paid in full at the time of such layoff or discharge. An employee quitting of his own accord shall be paid on the next regular pay day.

**Section 4.**    Employees working on a daily referral will be paid on the next regular pay day.

# ARTICLE 6

## BONUSES

**Section 1.**    It is agreed that the Employer shall not pay bonuses of any kind or description to Journeyperson Glaziers, directly or indirectly, except as provided for in Article 5; Article 12; and Article 13.

# ARTICLE 7

## CLASSIFICATION/SCOPE OF WORK

**Section 1.**    Glaziers, Architectural Metal and Glass Workers General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, distributing, handling or removal of the following on site: art glass, prism glass, beveled glass, leaded glass, protection

6

glass, plate glass, window glass, pre-glazed windows, mirrors of all types, wire glass, ribbed glass, ground glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, stick curtainwall systems, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials on the job site, either temporary or permanent, on or for any building in the course of repair, remodel, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels as set forth below, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and stick curtain wall systems and unitized systems as set forth below; (4) the glazing of automatic door and entrances and revolving doors; the installation of door(s) and window(s) frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bathtub enclosures, storm sash where the glass becomes an integral part of the finished product, including the maintenance and repair of all of the above; the fabrication and distribution of all glass and glass-related products on site; (5) any and all handling, unloading and loading of tools, equipment and materials will be performed by members of this International Union.

The Employer shall, when requested by the Union, deliver a "Letter of Assignment" and/or a "Letter of Past Performance" in form and substance as will clearly state that a certain type of work was assigned to and performed at a given location by Glaziers under this Agreement.

For unitized systems involving curtain walls an employer who has never performed this work may subcontract the work without violating this agreement. Subject to the provisions of Article 8 below, if an employer performs this work with his own employees, it must be performed by glaziers.

Scaffolding of any type or description incorporating all safety rules (except scaffolding provided by the General Contractor and/or patent type scaffolding, the use and erection of which shall have been contracted for by the Employer); and the installation of the above materials when in the shop or on the job site, either temporary or permanent, on, or for any building in the course of repair, remodel, alteration or construction.

## ARTICLE 8

## RECOGNITION OF PAST PRACTICES

That an employer who as of January 1, 2003 is signatory to a written collective bargaining agreement with both Glaziers Local 27 and another labor organization that claims overlapping

7

work jurisdiction may assign that portion of the work consistent with that employer's past practice in effect before January 1, 2003.

That for such dual signator employers signed to both agreements as of January 1, 2003, the Union waives any grievances and/or contract claims for pay in lieu of work performed by another trade. Welfare, Pension and Apprentice Training fringe benefits based upon hours worked in covered employment by members of another labor organization shall not be due.

That a dual signator employer who was signed as of January 1, 2003 to both Union agreements may subcontract work consistent with and in conformance with that employer's past practice prior to January 1, 2003.

Employer must provide evidence of past practice immediately upon request by the Union.

That the Union with its own counsel and employer's cooperation will defend an employer in a jurisdictional dispute commenced by another labor organization claiming work covered within the Glaziers work jurisdiction brought before the National Labor Relations Board.

All employers must assign and subcontract work consistent with the terms of the Glaziers Union agreement subject to the above.

The employer shall, when requested by the Union, deliver a "Letter of Assignment" and/or "Letter of Past Performance" in form and substance as will clearly state that a certain type of work was assigned to and performed by Glaziers under this Agreement.

## ARTICLE 9

## SUB-CONTRACTING

**Section 1.**    Subject to the provisions of Article 8 above, all covered work under this Agreement undertaken by the Employer within the geographic territory described in Article 10 above shall be performed by Employees covered by this Agreement.

**Section 2.**    Employers shall not contract any work covered by this Agreement to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work to any person, firm, or company who does not have an existing labor agreement with Glaziers Local 27.

## ARTICLE 10

## GEOGRAPHICAL AREA

**Section 1.**    This Agreement applies to all covered work under the terms of this Agreement performed within the following geographical area:

8

0008

On the north the Wisconsin State line, on the west Route 47, from the Wisconsin State line north, to Route 24 south, with a ten (10) mile buffer zone, east of Route 47, from Route 52 north to Route 24 south, with full jurisdiction given to Local 1164 regarding the following towns on Route 47: Sugar Grove, Yorkville, Morris and Dwight; on the east, Route 53, Gary, Indiana to Highway 6, then west to Highway 55 then south to Fowler, Indiana and on the south to Route 24. See map on the following page.

and such additional jurisdiction as set forth in the Union's Grant of Charter and as determined by the General Executive Board from time to time under Section 70 of the IUPAT General Constitution.

**Section 2.**      It is agreed that where glazing contracts are taken outside of the specified territory covered by the Agreement, not less than twenty-five (25%) percent of the Glaziers or Apprentices employed shall be among the Employees of the Employer who are then employed under the terms of this Agreement.

**Section 3.**      The contractor or the employer party to this agreement, when engaged in work outside the geographical jurisdiction of the Union party to this agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area.

## ARTICLE 11

## LODGING

When Glaziers are sent out of the area specified in Section 1, Article 8, where it is impractical for them to return home each night, the board, lodging if necessary, and transportation costs shall be paid by the Employer, and all riding time, but not to exceed four (4) hours, shall be paid at the rate of single time.

## ARTICLE 12

## APPRENTICES

**Section 1.**      Apprentices shall be indentured in the employ of the Employer in accordance with the Apprenticeship Program approved by the United States Department of Labor.

**Section 2.**      The Employer shall be entitled to one (1) Apprentice for the first three (3) Journeyperson Glaziers employed and one (1) for each additional six (6) Journeyperson Glaziers employed.

(Exception: If the Employer's right to train apprentices has been revoked by the Joint

9

0009

Apprenticeship and Training Committee). This section shall not be construed to replace any Journeyperson in any shop when the Joint Apprenticeship and Training Committee determines that substantial unemployment exists in the area.

**Section 3.**    The wages of the apprentice shall be as follows:

| | | | |
|---|---|---|---|
| 1. | First six months | – | 35% of Journeyperson's wage rate |
| 2. | Second six months | – | 45% of Journeyperson's wage rate |
| 3. | Third six months | – | 55% of Journeyperson's wage rate |
| 4. | Fourth six months | – | 70% of Journeyperson's wage rate |
| 5. | Fifth six months | – | 80% of Journeyperson's wage rate |
| 6. | Sixth six months | – | 90% of Journeyperson's wage rate |

After three (3) years of apprenticeship and upon certification of the J.A.T.C. Instructor and J.A.T.C. Trustees, he or she shall be given the Journeyperson's wage rate.

**Section 4.**    Apprentices can be used on all glass requiring more than three (3) persons according to the glass size schedule. Not more than one (1) apprentice may be used except where six (6) or more persons are required as provided in Article 14.

**Section 5.**    A Joint Apprenticeship Committee composed of three (3) representatives of the Glazing Contractors of Chicago and Vicinity and three (3) Union representatives shall be established in conformity by the United States Department of Labor, Bureau of Apprenticeship and the Glaziers Joint Apprenticeship Agreement of Chicago and Vicinity.

It shall be the duty of this Committee to implement the present Apprenticeship Program and to establish the rules of its operation and such Committee shall meet at least once each quarter for such purpose.

**Section 6.**    Apprentices shall not work alone and shall be with a Journeyperson Glazier on each job. Apprentices shall be allowed to work overtime as long as a Journeyperson is not bumped for such overtime. Apprentices will not be allowed to work overtime on his or her regularly scheduled school night.

**Section 7.**    The parties hereby agree to become participants in the National Glaziers and Glassworkers Industry Apprenticeship Training and Journeyman Education Fund, and the Employer shall contribute to said Fund, Forty Cents ($.40) for each hour worked by employees under this Agreement, effective June 1, 2003 plus such additional amounts as may be allocated by the Union in its sole discretion June 1, 2004 and June 1, 2005.

Effective January 1, 2003 contributions on behalf of the National Apprentice Fund shall be made to the Glaziers Union Local No. 27 Joint Apprenticeship Fund.

0010

Section 8.    Employers will be notified by the Glaziers Union Local No. 27 Joint Apprenticeship Training Committee when Journeyperson classes are offered.

## ARTICLE 13

## SWING STAGE/SCAFFOLD/INSURANCE

Section 1.    Whenever Glaziers and Apprentices are required to work on swing stages, scaffold, hydraulic or electric scaffold or jacks of any description or with window washer belts where there is a thirty (30) foot or more fall, they shall receive Fifty Cents ($.50) per hour over the prevailing rate of wages for such work.

Section 2.    Where skylights are glazed and are held in place by bolts, screws or nuts from the inside of the opening, which creates a most hazardous condition for the Glazier, Fifty Cents ($.50) per hour over the prevailing rate of wages shall be paid for such work.

Section 3.    It is agreed that all necessary scaffolding, etcetera, required on any building during the course of construction or repair, shall be furnished by the Employer. It is agreed that scaffolding, either rented or owned by the Employer, can be erected initially and dismantled by Glaziers or qualified erecting companies provided that such work is done in conformity with the State Laws of Illinois.

Section 4.    It is also agreed that the Employer must carry all necessary and required insurance, covering all of his Employees. He shall carry Worker's Compensation Insurance in the State in which his Employees are working. He shall also make contributions for Social Security and unemployment insurance as required by law regardless of the number of men employed by him. Each Employer shall file with the Union a certificate of such Workmen's Compensation Insurance containing not less than a ten (10) day notice of cancellation.

Section 5.    Should any Employee meet with an accident while at work, the person in charge of the work shall see that the Employee is cared for. Transportation shall be furnished to a doctor or to a hospital by the Employer at the Employer's expense. All injuries, regardless of how minor, will be reported to the Employer within twenty-four (24) hours by the foreman, supervisor and/or the injured Employee.

## ARTICLE 14

## FOREMAN/SHOP STEWARD

Section 1.    The Business Representative and Shop Steward shall be furnished a list of all new hires by the Employer.

11

02/04/2008 16:20 FAX 312 421 7864    PAINTER DIST. COUNCIL    → ARNOLD

**Section 2.**    The Union shall have the right to appoint a Shop or Job Steward in each shop from the Union members regularly employed in each shop.

**Section 3.**    The duty of all stewards is to enforce the rules of this Agreement and to report to the Business Representatives any infractions or violations that may come to his attention. He/she shall have the right to examine working cards and to object to any employee working not in possession of the current quarterly working card. A shop steward shall not be discharged for performing duties of a shop steward.

**Section 4.**    All Foremen shall receive One Dollar and No Cents ($1.00) per hour above the prevailing scale. At the option of the Employer, a General Foreman can be appointed and be paid One Dollar and Twenty Five Cents ($1.25) per hour above the prevailing scale.

**Section 5.**    A Foreman shall be appointed by the Employer for all work contracted for by the Employer, when the size of the crew exceeds three (3) persons.

The duties of the Foreman, among others, shall be as follows:

(A)    Seeing that material requirements and equipment are available for the most efficient conclusion of the job.

(B)    When necessary, inform his/her Employer of glass types and sizes required.

(C)    Coordinate glass and glazing work with other trades.

(D)    When requested, report Glaziers' time on Employer's regular time cards.

## ARTICLE 15

## EXPENSE MONEY

Each Journeyperson Glazier and Apprentice Glazier shall receive Five Dollars ($5.00) per day Expense Money regardless of where they work.

## ARTICLE 16

## GLASS SCHEDULE

**Section 1.**    It is agreed that the following glass schedule of work and persons shall apply for all work contracted by the Employer:

12

0012

Number of Persons up to, but not including 3/8"

From 120 united inches up to 150 `united inches -  2
Not over 175 united inches              -  3
Not over 200 united inches              -  4
Not over 225 united inches              -  5
Not over 240 united inches              -  6
Not over 260 united inches              -  7
Not over 300 united inches              -  8

Over 300 united inches, Add one person for each 15 united inches.

Glass schedule for 3/8" and above is based on 3.25 lbs. Per 1/4" of glass and square footage calculated on actual inch above fractions, i.e. 60 ½ = 61.

3/8" and up to but not including 3/4"

Will be total weight divided by sixty pounds (60#) per person. (See schedules attached hereto as Appendix A and Appendix B.

3/4" and above

Will be total weight divided by seventy pounds (70#) per persons. (See schedule attached hereto as Appendix C).

When automatic lift equipment is used, the person power requirements set forth in the up to, but not including 3/8" schedule shall apply (providing the glass does not have to be unloaded or moved manually).

Section 2.    To determine the number of persons required for Insulating Glass Units, use total glass thickness as follows:

Up to 3/8" of glass, use up to, but not including 3/8" schedule
From 3/8" up to 3/4" use - 60 lbs. per person
For 3/4" and over use - 70 lbs. per person

e.g.    1/8" glass - 1/4" air space - 1/8" glass = 1/4" - use schedule
1/4" glass - ½" air space - 1/4" glass = ½" - use 60 lbs. per person
½" glass - ½" air space - 1/4" glass = 3/4" - use 70 lbs. per person

Section 3.    It is further agreed that: (1) when glass is manually lifted seven (7) feet or more to platform level, or (2) when weather conditions require it, additional persons shall be used on the following basis:

13

0013

First size enumerated in the applicable schedule -        1 Additional Person
Next two sizes enumerated in the applicable schedule -    2 Additional Persons
Next three sizes enumerated in the applicable schedule -  3 Additional Persons
Next four sizes enumerated in the applicable schedule -   5 Additional Persons

Union Glazing Schedule
Persons Required

Plastics Up To and Including ½"

| UNITED INCHES | When manually lifted Under 7 ft. to platform level - persons required | When manually lifted 7 ft. or more to platform level - persons required |
|---|---|---|
| From 120 United Inches | 2 | 3 |
| Up to 160 United Inches | 3 | 4 |

All safety precautions will be adhered to.

**Section 4.** Upon request of the Foreman for extra help, the same shall be furnished by the Employer.

**Section 5.** It is further agreed that all trucks setting glass shall be equipped with a first aid kit. If employees ride the back end of the truck, the truck must be equipped with a tarpaulin.

**Section 6.** It is further agreed that chauffeurs, drivers of trucks, glazing superintendents (so-called) or Employer shall in no way assist directly or indirectly in the setting of glass.

**Section 7.** Chauffeurs or drivers of trucks shall not hold ladders or in any manner shape or form be the supervisor of Glaziers on any glazing job. Truck drivers belong on the truck only.

**Section 8.** It is also agreed that the Employer shall identify all trucks or vehicles used in the glass and glazing trade by the name of the Employer permanently affixed to each side of the truck of vehicle.

**Section 9.** All wood sash shall be bedded in putty, blocked and sufficiently pointed, and the putty line must be extended to cover to the end of the rabbet.

**Section 10.** The Business Representatives or any other authorized representative of the Union, shall have the right to visit all places, shops or jobs where work is going on for the purpose of inspection. They shall also have the right to examine working cards and pay envelopes of all employees covered by this Agreement.

14

**Section 11.**    No Employer shall at any time make any arrangements whatsoever, written or oral, with any Glazier for the performance of glazing work or any description whatsoever, other than to employ Glaziers as provided for in this Agreement in the usual and regular manner.

## ARTICLE 17

## RESETTING GLASS/REMOVAL OF GLASS

It is also agreed that where storefronts are to be reset, the glass schedule shall apply when glass is removed from the opening.

When a plate is broken and a replacement is being made in two (2) or more lites, the salvage may be stripped out of the opening with the crew required for one-half (½) the opening (minimum three (3) persons required), so long as no single piece larger than one-half (½) of the opening is removed.

## ARTICLE 18

## GRIEVANCE PROCEDURE

Any grievance arising under this contract shall first be brought before the Board of Business Agents of the Union. If the Union and the Employer are unable to resolve the dispute, either party may submit the matter to Step 2 for final and binding resolution.

**Step 2.**    Any grievance, dispute, misunderstanding or difference arising during the life of this Agreement, interpretation of the same shall be decided by a Committee composed of three (3) representatives appointed by the Employers and three (3) by the Union whose majority decision shall be final and binding upon all parties to the dispute. Representatives will be appointed only for the length of the contract. In the event of the Committee's inability to decide an issue or a deadlock by the Committee, a third party shall be selected by them to act as an Arbitrator. In the event that they are unable to agree, an impartial arbitrator shall be selected from a list submitted by the Federal Mediation and Conciliation Service upon the request of either party to this Agreement.

The Federal Mediation and Conciliation Service will submit a list of five (5) Arbitrators. The Union shall strike the first name from the list and the Employer shall then strike one name, and thereafter the parties shall strike alternately. The person whose name remains, shall be the Arbitrator, provided that either party, before striking any name, shall have the right to reject one (1) panel of Arbitrators. The Arbitrator shall be notified of this selection by a joint letter from the Employer and the Union requesting that he/she set a time and place for the hearing, subject to availability of the Employer and the Union representative. The letter shall specify the issue(s) to the Arbitrator.

The Arbitrator shall have no right to amend, modify, nullify, ignore or add to the provisions

15

0015

of the Agreement. He/she shall consider and decide only the particular issue(s) presented to him/her in writing by the Employer and the Union, and his/her decision and award shall be based solely upon his/her interpretation of the meaning or application of the terms of this Agreement to the facts of the grievance presented. The award of the Arbitrator shall be final and binding on the Employer, the Union and the Employee(s) involved.

The expenses of the Arbitrator, including his/her fee, shall be equally shared by the Employer and the Union. If an Arbitrator determines that the violation of the Agreement is willful, he/she shall have the authority to attach to any monetary award rendered hereunder a liquidated damage of Twenty Five Percent (25%) of such award to be paid to the grieving party.

If the Employer fails to comply with any award or decision of the Arbitrator, then the Union will not be prohibited by Section 2 of this Article from resorting to economic and/or legal action including withholding of services, striking or picketing during the period of such non-compliance; providing the Union, before resorting to such economic action, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

To be a legal grievance under this Agreement, the Employee or the Union must present said grievance in writing to the Employer representative within thirty (30) days of the event giving rise to the grievance or within thirty (30) days after such grievance comes to the knowledge of the aggrieved Employee.

**Section 2.**   Except as otherwise provided in the wage and benefit provisions of this Agreement and in Article 2, Section 3, the grievance machinery provided herein and the administrative and judicial remedies and procedures provided by the statute are the sole means of settling any dispute by the employees against the Employers whether relating to the interpretation of this Agreement or otherwise; accordingly, neither the Union nor the Employees will instigate, promote, or engage in any strike, slow-down, or concerted withholding of services during the term of this Agreement, provided no Employee shall be disciplined for refusing to cross a lawful primary picket line established by any other union. The Employer agrees that there will be no lockout during the term of the Agreement.

**Section 3.**   Employees, Employers and the Union are encouraged to utilize the Grievance Procedure prior to seeking judicial remedies.

## ARTICLE 19

## VACATIONS

Each Employee may take a two (2) week vacation. Vacations will, in so far as possible, be granted at times most desired by the Employee. However, in order to insure an orderly operation, sufficient notice in advance must be given and then mutually agreed to by the Employer. An Employee may take a third week's vacation.

0010

## ARTICLE 20

## HEALTH AND PENSION AND ANNUITY CONTRIBUTIONS

**Section 1.**    Effective June 1, 2003, the Employer shall pay Five Dollars and Thirty Four Cents ($5.34) for each hour worked be each Journeyperson and Apprentice Glazier into the Health and Welfare Trust Fund plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2004 and June 1, 2005. The Employer is required to make contributions to the Fund for employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter, performing work of a type not falling within the jurisdiction of this Agreement, including but not limited to supervision, general management, sales, estimating, clerical or maintenance work, the Employer of the Employee shall make contributions to the Health and Welfare Fund on behalf of that Employee for a minimum of one hundred sixty (160) hours per month.

**Section 2.**    Effective June 1, 2003, the Employer shall pay Four Dollars and Forty Cents ($4.40) for each hour worked by Journeyperson Glaziers into the Local No. 27 Pension and Retirement Plan plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2004 and June 1, 2005. The Employer is required to make contributions to the Fund for the Employee/owner, partial owner, or direct relative; husband, wife, brother or sister, son or daughter, performing work of a type not falling within the jurisdiction of this Agreement, including but not limited to, supervision, general management, sale, estimated, clerical or maintenance work, the Employer of the Employee shall make contributions to the Pension and Retirement Plan on behalf of that Employee for a minimum of one hundred sixty (160) hours per month.

**Section 3.**    1a.    Commencing the first day of June 1974, and for the duration of the Agreement plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2004 and June 1, 2005, and any renewals or extensions thereof, the Employer agrees to make payments to the International Brotherhood of Painters and Allied Trades Union and Industry Pension and Annuity Fund for each Employee covered by this Agreement, as follows:

1b.    Effective June 1, 2003 for each hour or portion thereof, for which an employee received pay, the Employer shall make a contribution of Three Dollars and Fifty Cents ($3.50) to the above named Pension and Annuity Fund plus such additional amounts as the Union chooses to allocate from its total economic adjustment package in its sole discretion in years two and three of this Agreement on June 1, 2004 and June 1, 2005.

1c.    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

17

1d.    Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification, covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

1e.    The payments to the Pension and Annuity Fund required above, shall be made to the International Brotherhood of Painters and Allied Trades Union and Industry National Pension and Annuity Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

2.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

3.    All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension and Annuity Fund.

4.    If an Employer fails to make contributions to the Pension and Annuity Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Fifteen Percent (15%) as may be assessed by the Trustees. The Employer's liability for payment under this Article or for non payment of wages shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause or for non-payment of wages which may be provided or set forth elsewhere in this Agreement.

5.    The Pension and Annuity Plan adopted by the trustees of said Pension and Annuity Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

**Section 4.**    Payments to the Glaziers Union Local No. 27, Pension and Retirement Plan and Glazing Employers and Glaziers Union Local No. 27 Health and Welfare Plan, shall be made monthly, no later than the tenth (10th) day of the succeeding month for which hours are reportable.

Each Employer agrees that any payment not made within fifteen (15) days of the succeeding month for which hours are reportable, shall be subject to liquidated damages of Fifteen Percent (15%) in addition to the amount originally required under the terms of this Agreement requiring a contribution to the Pension and Retirement and Health and Welfare Plan.

18

**Section 5.**    If an Employer fails to make contributions to any of the Funds referred to in this Article within ten (10) days after the date required by the Trustees of this Agreement, the Union shall have the right to take whatever legal steps are necessary to secure compliance with this Agreement, and any other provisions hereof to the contrary notwithstanding and the Employer shall be liable for all costs for collection of the payments due together with attorney's fees and such liquidated damages not to exceed Fifteen Percent (15%) as may be levied by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement; providing the Union, before resorting to economic action such as striking or picketing, shall give the Employer two (2) business days' written notice of its intention to take such economic action.

## BONDING

**Section 6.**    Each Employer agrees that before commencing any work to which this Agreement applies, a performance bond in the sum of Thirty Thousand Dollars ($30,000.00) shall be provided to insure the prompt and full payment of all contributions due to the Welfare Fund, Pension Fund, and the Apprenticeship Fund.

(b) In the event an Employer fails for any reason to satisfy the bonding requirement above, the Employer shall be personally liable to the above Funds in the amount of Thirty Thousand Dollars ($30,000.00) plus all unpaid amounts in excess of that sum which are due the Funds by that Employer and legal fees and cost of collection. In the event the Employer is a corporation, liability under this paragraph shall be imposed not only on the corporation, but also personally on each corporate official of that Employer empowered to execute agreements or sign checks on the corporation's behalf, or to designate the persons empowered to do so. The provisions of this paragraph shall in no way relieve or excuse any Employer of the obligation to provide the bond described above, nor shall this provision limit the personal liability of said corporate officers based on operation of law.

(c). Any Employer commencing work in violation of the requirements set forth above shall be in violation of this Fringe Benefit Fund contribution payment provision of this Agreement.

## ARTICLE 21

## CHICAGOLAND CONSTRUCTION SAFETY
## COUNCIL/LABOR MANAGEMENT INITIATIVE

**Section 1.**    Effective June 1, 2003, each Employer shall contribute Three Cents ($.03) for each hour worked by employees under this Agreement to the Chicagoland Construction Safety

19

Council, a not-for-profit corporation.

**Section 2.**    Effective June 1, 2003, each Employer shall contribute Five Cents ($.05) for each hour worked by employees under this Agreement to the Painters and Allied Trade Labor Management Cooperation Initiative (P&ATLMCI), a not-for-profit organization. Contributions will be remitted to the Apprentice Training Fund for distribution to the P&ATLMCI.

## ARTICLE 22

## DISCIPLINARY ACTION

The Union agrees to cooperate with Management and support disciplinary bars given to Employees for just cause.

## ARTICLE 23

## FEDERAL AND STATE LEGISLATION

**Section 1.**    The provisions of this Agreement shall be effective only to the extent permitted by the Labor Management Relations Act of 1947, as amended.

**Section 2.**    In the event that any Federal or State legislation, governmental regulation or court decisions cause invalidation of any Article or Section of this Agreement, all other Articles and Sections not so invalidated shall remain in full force and effect.

## ARTICLE 24

Having complied with all the provisions of this Agreement on its part to be performed, the Employer shall be permitted to advertise and otherwise identify the Employer as a Union shop.

In the event this Agreement is terminated, then all such advertising shall be immediately canceled or otherwise recalled.

## ARTICLE 25

## CONTRACT DURATION/SIGNATURE PAGE

This Agreement shall continue in full force and effect from June 1, 2003 through May 31, 2006 and shall continue in force and effect from year to year thereafter, unless either party shall desire to change any of the terms herein, in which case a written notice of the desired change(s) must be served to the other party not less than sixty (60) days nor more than ninety (90) days written notice by registered mail or certified mail prior to the expiration date.

20

IN WITNESS WHEREOF, said parties have to this Agreement, or by their representatives on their behalf, respectively, set their hands and seals.

**W & G, Inc.**

PAINTERS DISTRICT COUNCIL NO. 14

By: _____
Terrence Fitzmaurice, Bus. Mgr./Secy Treas

GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NUMBER 27 CHICAGO AND VICINITY, INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO

BY _____
GEORGE STRIPP
(Please print name signed above)

BY: _____
Michael Mabus, Business Representative

DATE: _October 4, 2005_

21

0021



**HURON VALLEY GLASS COMPANY, LLC**

5075 Carpenter Road ◆ Ypsilanti, MI 48197
(734) 434-1160 ◆ (734) 434-2046 FAX

Thursday, August 04, 2005

Michael Mabus
Glaziers, Architectural Metal and Glass Workers, Local Union Number 27
4225 Lawndale Avenue
Lyons, Illinois 60534

Dear Michael:

It was a pleasure speaking with you yesterday. Pursuant to our conversation regarding your Articles of Agreement, we would appreciate your please clarifying the following by letter:

**Paragraph one & Article 10**
Please clarify that this agreement has no ramifications beyond the territorial reach of Local 14.

**Article 2, sections 1, 2 & 3; Article 7; Article 9; Article 13, section 3 and Article 14, section 2**
It is our intention to employ Ironworkers as well as Glaziers. We fear that by signing this agreement we will immediately be in default. Also please clarify that the term *Shop*, used in these articles and any others, refers strictly to the field and will not affect any intentions we may have relative to factory work.

**Article 2, section 6**
It is our intention to employ a consistent crew of thirty to forty men once our operations reach critical mass in the Chicago area. This being the case, we do not wish to rely on a referral process.

**Article 3, section 3**
We cannot guarantee that the last sentence will be adhered to given the intentions expressed above.

**Article 8**
Given our intentions expressed above, we may find difficulty in delivering a "Letter of Assignment" and/or "Letter of Past Performance."

**Articles 15**
As we discussed, we cannot guarantee adherence to the Glass Schedule. Practical weight and size limitations must prevail.

**Articles 15, sections 4 & 6**
As we discussed, our field forces in the early going will be directed by men who are Cleveland Glaziers and will function as our General Foremen. We expect to have a Local Glazier Foreman, but all hiring, firing and crewing decisions will be at the discretion of the men we send. We do not presently have a need for other decision makers.

We await your response and look forward to a long and profitable relationship with Local 14.

Sincerely,

Vincent V. Klees
President

A NATIONAL CONSTRUCTION ENTERPRISES COMPANY



**Glaziers, Architectural Metal and Glass Workers
Local Union No. 27, Chicago and Vicinity**

OF THE

INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO

AFFILIATED WITH PAINTERS' DISTRICT COUNCIL NO. 14

MEETS THE 4TH MONDAY OF EACH MONTH, 6309 WEST 26TH STREET, BERWYN

**4225 LAWNDALE AVENUE • LYONS, IL 60534**

MICHAEL RADUS

MICHAEL O'DONNELL

MICHAEL COOK

JAMES AUGUSTYN

RICHARD GAIDELIS

MICHAEL ONN

LAWRENCE TASIC

TERRENCE FITZMAURICE
BUSINESS MANAGER/
SECRETARY-TREASURER

August 11, 2005

By Facsimile (734) 434-2046
and Regular Mail
Mr. Vincent Klees
President
Huron Valley Glass Company, LLC
5075 Carpenter Road
Ypsilanti, Michigan 48187

Re:    Glaziers Local 27 Agreement 

Dear Sir:

I am responding to your August 4, 2005 letter seeking clarification of certain articles of the agreement. While I lack authority to vary the contract terms, I can address their practical application.

1.    **Geographical Territory,** Article 10 Pages 13-14

Your conclusion is generally correct. The map contained at Article 10, Section 1 defines Local 27's geographic jurisdiction. The contract would apply outside the defined area if an employer took a Local 27 member domiciled here to another jurisdiction to perform work (see Article 10, Sections 2 and 3). Those Local 27 members working in a foreign jurisdiction would be entitled to the wages, benefits and working conditions under this contract which they regularly enjoy and lodging under Article 11.

2.    **Assignments**

Your items 2 and 5 are addressed together as they are related. You have stated your intent to employ Glaziers and Ornamental Ironworkers. In the past other employers have utilized composite crew arrangements as a solution to potential jurisdictional disputes to perform all work under both agreements. Glaziers 27 would abide by such a work assignment provided the crew is composed of a minimum of 50% glaziers.

will △

The above paragraph should address your overall concerns; but, as you include a variety of contract articles, I will address each.

Mr. Vincent Klees
President
Huron Valley Glass Company, LLC
August 11, 2005
Page Two

Recognition, Sections 1, 2 and 3

The contract is a 9(a) agreement, all glaziers are required to join the Union.

Subcontracting, Article 9

Having discussed your ability to utilize a composite crew, there should be little need for
subcontracting.  Enforcement of Article 9, Section 2, Glaziers 27 signatory
subcontracting clause can be expected as it pertains to covered work by others.  It is a
work preservation clause.

*caulkers*
*signatory*

Scaffolding, Article 13, Section 3

The above article permits erection by scaffolding companies, and thus not a violation of
the above subcontracting section.  Presumably it would be subject to composite crew
arrangements if performed by your own work force.

Stewards, Article 14, Section 2

Local 27's right to appoint a steward on the project from within the employer's glazier
workforce remains unchanged.  The steward is a working steward subject to the same
performance as any other employee.  I presume you reference this because of the word
"shop" which is explained below.

2.(b)   **Shop Work**

    You are correct.  The Articles of Agreement do not extend to factory work.  Local
27 has a separate factory agreement.

*will expend*

3.     Hiring, Article 2, Section 6, Page 4

    Glaziers 27 does not have an exclusive hiring hall.  Should you require additional
manpower, we would be delighted to supply candidates for hire if so requested, but they
are not the sole source of referral.

0024

Mr. Vincent Klees
President
Huron Valley Glass Company, LLC
August 11, 2005
Page Three

4.   **Overtime Manning**, Article 3, Section 3, Page 7

Glaziers 27's concern here is that if a composite crew is utilized (which is what I understand to mean when you say "given the intentions expressed above") that all the overtime could be assigned to another trade. Glaziers 27 would expect that in an overtime assignment situation the employer would at a minimum offer the Glaziers manning the job the overtime assignment on the project consistent with the manning of the composite crew. Should they decline the overtime, management could approach others to maintain the crew percentage.

5.   See Item 2 above, Article 8, Page 12.

6.   **Glass Schedule**, Article 16

Article 16 applies to the setting and lifting of raw glass. This article is an integral part of the agreement. As explained, the schedule is not adhered to for pre-glazed and/or panelized systems.

7.   **Foreman**, Article 14

Local 27 understands your need to provide key men for the operation from out of town and does not object to this. Should employer place a Local 27 member in a position of authority, putting him in charge of three or more men, the glazier should receive an additional $1.00 (one dollar) per hour above scale. It is presumed that your key men are paid in excess of Local 27 foreman rates.

Local 27 shares your desire for "a long and profitable relationship". I hope with this information that you will promptly sign our agreement.

Should you have any further questions, do not hesitate to call.

Fraternally yours,

Mike Mabus



PHONE 708-445-9000
FAX 708-445-9007

MICHAEL MABUS
BUSINESS REPRESENTATIVE
MICHAEL O'DONNELL
BUSINESS REPRESENTATIVE
MICHAEL COOK
BUSINESS REPRESENTATIVE
JAMES AUGUSTYN
PRESIDENT
RICHARD GAIDELIS
VICE-PRESIDENT
MICHAEL OHM
RECORDING SECRETARY
LAWRENCE TASIC
FINANCIAL SECRETARY

TERRENCE FITZMAURICE
BUSINESS MANAGER/
SECRETARY-TREASURER

## Glaziers, Architectural Metal and Glass Workers
## Local Union No. 27, Chicago and Vicinity

OF THE

INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO
AFFILIATED WITH PAINTERS' DISTRICT COUNCIL NO. 14
MEETS THE 4TH MONDAY OF EACH MONTH. 6309 WEST 26TH STREET, BERWYN

4225 LAWNDALE AVENUE • LYONS, IL 60534



Mr. Vince Klees
Huron Valley Glass LLC
5075 Carpenter Road
Ypsilanti Michigan, 48187

Dear Mr. Klees,

As per our conversation on August 16, 2005 I agree to amend my letter dated August 11, 2005.                    Amendment as follows;

**Number 2**    **Assignment-** Delete last sentence, "Glaziers Union Local No.27 would abide by such a work assignment provided the crew is composed of a minimum of 50 % Glaziers."

**Number 2(b)**  **Shop Work –** You are correct. The Articles of Agreement do not extend to factory work. Glaziers Union Local No.27 has a separate Factory Agreement. If you choose to open up a Non-Union fabrication shop within Local 27 jurisdictional area we will not pursue the organization of that shop. That said shop would peacefully co-exist with our outside Agreement.

Sincerely,

Michael Mabus
Business Representative
Glaziers Union Local No.27

0026